**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen Laughter,<br><br>        Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation, an administrative agency of the United States,<br><br>        Defendant. | No. CV-16-08196-PCT-DLR<br><br>**ORDER** |

Plaintiff Helen Laughter, a member of the Navajo Nation, seeks judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation (ONHIR) denying Plaintiff relocation benefits under the Navajo-Hopi Settlement Act. (Doc. 15.) Before the Court are the parties' motions for summary judgment. (Docs. 40, 45.) The motions are fully briefed, and neither side has requested oral argument. For reasons stated below, summary judgment is granted in favor of Defendant and its decision denying benefits is affirmed.

## BACKGROUND

### I. Navajo and Hopi Relocation Assistance

In 1882, President Chester Arthur established a large reservation in northeastern Arizona for use by the Hopi Indians and "such other Indians as the Secretary of the Interior may see fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*,

878 F.2d 1119, 1121 (9th Cir. 1989). Navajo Indians migrated to much of the reservation and settled there alongside the Hopi. *Id.* In 1962, this district court found that the two tribes held joint, undivided interest in most of the reservation, which was called the "joint use area." *Id.* (citing *Healing v. Jones*, 210 F. Supp. 125 (D. Ariz. 1962)).

Twelve years later, after establishment of the joint use area failed to solve inter-tribal conflicts over the land, Congress passed the Navajo-Hopi Settlement Act, 25 U.S.C. § 640d et seq. The Act, among other things, authorized the district court to make a final partition of the land after mediation efforts between the tribes had failed. *See Sekaquaptewa v. MacDonald*, 626 F.2d 113, 115 (9th Cir. 1980). The Act directed creation of the ONHIR's predecessor, the Navajo-Hopi Indian Relocation Commission, to provide services and benefits to help relocate residents who were located on lands allocated to the other tribe as a result of the court-ordered partition. *See Bedoni*, 878 F.2d at 1121-22; U.S.C. § 640d-11. The relocation services included personally interviewing, where possible, each head of household to determine relocation needs and to explain benefits (housing and moving expenses) for which the person might be eligible. 25 C.F.R. § 700.135.

To be eligible for benefits, the applicable regulations and policy memo require a Navajo head of household to be a legal resident on December 22, 1974 of what became the Hopi Partitioned Lands (HPL). 25 C.F.R. §§ 700.97, 700.138, 700.147(a); Doc. 40-2; *see Herbert v. ONHIR*, No. 3:06-cv-03014-NVW (D. Ariz. Feb. 27, 2008) (Doc. 27). The burden of proving legal residence and head of household status is on the applicant. 25 C.F.R. § 700.147(b).

**II. Facts and Procedural History**

Plaintiff is an enrolled member of the Navajo Nation who applied for relocation benefits in April 2005. (Doc. 17; AR 18-21) The application was denied six months later, in part because Plaintiff was found not to be a legal resident of the HPL as of December 22, 1974. (AR 69-71.) Plaintiff appealed, and a hearing before an independent hearing officer (IHO) was held in January 2011. (AR 73-77, 103-48.)

Plaintiff, her father Joe Klain, and her sister Blanche Butler testified at the hearing.

They explained that after moving from California to Arizona in 1971, they lived in a traditional mud-style hogan on top of Black Mesa, which became part of the HPL. Plaintiff's paternal grandmother lived in a similar hogan at the base of Black Mesa in Tonalea, which became Navajo Partitioned Lands (NPL). Plaintiff and her family ultimately resided in Tonalea near her grandmother after her father constructed a concrete block home on the property. Plaintiff and the other witnesses testified that the family was living at the Black Mesa site in December 1974 and did not move into the block home in Tonalea until the end of 1975. (AR 109, 114, 123, 132, 144.)

The IHO denied Plaintiff's application for relocation benefits in a written decision issued April 18, 2011. (AR 174-80.) The IHO found the witnesses not credible as to years and dates, and concluded that based on residence histories provided by Plaintiff and her father during the application process and a Bureau of Indian Affairs (BIA) enumeration roster showing that the family lived in the Tonalea block house in early 1975, Plaintiff had not met her burden of showing that she was a legal resident of the HPL as of December 22, 1974. (AR 177-79.) The IHO's ruling became Defendant's final decision when it affirmed the ruling on July 18, 2011. (AR 182). Plaintiff then commenced this action for judicial review pursuant to 25 U.S.C. § 640d-14(g) and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et. seq. (Docs. 1, 15.)[1]

## STANDARD OF REVIEW

In reviewing a federal agency's decision under the APA, the district court applies a "narrow and deferential" standard of review. *Mike v. ONHIR*, No. CV-06-0866-PCT-EHC, 2008 WL 54920, at *1 (D. Ariz. Jan. 2, 2008). The court may reverse only if the decision "was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (citing 5 U.S.C. §

---

[1] The original complaint also sought judicial review of Defendant's decision denying relocation benefits to Plaintiff's now-deceased father, Joe Klain. (Doc. 1.) The claim was voluntarily dismissed (Docs. 11, 13), and Plaintiff thereafter filed the operative amended complaint that asserts only her claim for judicial review (Doc. 15).

706(2)(A), (E)). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Mike*, 2008 WL 54920, at *1 (quoting *Info. Providers' Coalition for Defense of First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991)). Under the arbitrary and capricious standard, the court must determine whether the agency's decision "was based on consideration of relevant factors and whether there has been a clear error of judgment." *Id.* (citing *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.2d 1468, 1471 (9th Cir. 1994)).

Summary judgment generally is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the court reviews an agency decision under the APA, "the focal point should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). Thus, when conducting "judicial review pursuant to the APA, 'summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.'" *O'Daniel v. ONHIR*, No. 07-354-PCT-MHM, 2008 WL 4277899, at *3 (D. Ariz. Sept. 18, 2008) (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)).

## DISCUSSION

Plaintiff contends that the IHO's conclusion that she was not a legal resident of the HPL as of December 22, 1974 is not supported by substantial evidence, and that the decision denying relocation benefits otherwise is arbitrary and capricious and contrary to law. (Doc. 40 at 5-13.) Defendant argues that the decision is reasonable and supported by substantial evidence, that the IHO provided cogent reasons for the adverse credibility findings, and that he properly followed applicable law and precedent. (Doc. 45 at 9-14.) The Court agrees with Defendant.

**I. Defendant's Decision Denying Benefits Is Supported by Substantial Evidence**

The IHO found as follows regarding Plaintiff's residence as of December 22, 1974: Plaintiff's paternal grandparents had a traditional Navajo use area in Tonalea and

Black Mesa and used the two sites seasonally. The Black Mesa site was used as the family's winter camp, and the family used the Tonalea site in the summer. Plaintiff's father, Joe Klain, was given a portion of the Tonalea site to build a block house for his family. Klain was interviewed by BIA staff in February 1975 at the block house he had constructed at the Tonalea site, and he identified himself and his children as residents of that home site. Klain and Plaintiff also reported to having lived at that home in Tonalea since at least June 1974. Plaintiff therefore was a legal resident of the Tonalea area in the NPL as of December 22, 1974, and was not entitled to receive relocation benefits under the ONHIR regulations. (AR 175-79.)

Plaintiff notes, correctly, that she and her two witnesses consistently testified that upon returning from California in 1971, the family moved back to Black Mesa (on the HPL) and resided there until after Plaintiff gave birth to her first child on August 24, 1975. (Doc. 40 at 6.) Plaintiff, however, wrongly asserts that this testimony was "uncontroverted." (*Id.*) In Plaintiff's own residence history report, she stated that since June 1974 she "[l]ived in own home, Tonalea, AZ." (AR 191.) Similarly, Klain indicated in his residence history report that since 1970 the "[s]econd seasonal location of home at the base became the most inhabited home site dwelling being closer to the trading post and schools" and that they "[l]ived at this home in Red Lake/Tonalea area." (AR 25.) In addition, a contemporaneous BIA enumeration roster for the joint use area shows that Klain was interviewed in Tonalea by BIA staff on February 4, 1975, and the block home was completed at this time. (AR 187.)

This evidence is substantial, and is inconsistent with the witness testimony that only the foundation of the block home was complete when Plaintiff had her marriage ceremony at the Tonalea site in April 1975 and that the block home was not fully built until the fall of 1975. (AR 112-14, 123, 126, 131-32, 144-45.) "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Akee v. ONHIR*, 907 F. Supp. 315, 318 (D. Ariz. 1995) (quoting *Info. Providers' Coalition*, 928 F.2d at 870). Considering the record as a whole, and giving

deference to the IHO's factual findings, the Court finds that a reasonable person could accept the documentary evidence relied on by the IHO as adequate to support his conclusion that Plaintiff was a legal resident of the NPL as of December 22, 1974.

Plaintiff testified at the hearing that the dates listed in the residence history reports were not entirely accurate, and that she does not know why her father was interviewed at the block home in Tonalea in early 1975. (AR 109, 117-18, 120-21.) Plaintiff contends that the residence history reports are too ambiguous, and the enumeration roster too unreliable, to contradict sworn testimony. (Doc. 49 at 8-10.) She further contends that the record must be considered as a whole, and Defendant's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. (Docs. 40 at 6, 49 at 8.)

This may be true, but substantial evidence is still "'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Akee*, 907 F. Supp. at 318 (quoting *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). Stated differently, an agency's decision "need only be reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989). Here, the IHO reasonably relied on the enumeration roster and residence history reports to find the witness testimony not credible as to dates and years, and to conclude that Plaintiff was not a legal resident on the HPL as of December 22, 1974.[2]

## II. Defendant's Decision Was Not Arbitrary or Capricious

Plaintiff contends that the IHO's decision was arbitrary and capricious because he previously has found witness testimony in other cases to be credible and has noted that a BIA enumeration roster, standing alone, cannot be the sole basis for denying relocation

---

[2] Plaintiff cites *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), for the proposition that the reasons for discounting sworn testimony must be "clear and convincing." (Doc. 49 at 5.) This standard, however, is an exception to the general rule and applies only in social security disability cases where the administrative law judge has not found the claimant to be a malingerer. 495 F.3d at 635. Indeed, *Orn* makes clear that testimony generally may be discredited for "specific, cogent reasons for the disbelief." *Id.* Here, the IHO provided such reasons for not believing the witness testimony.

- 6 -

benefits. (Docs. 40 at 7-10; 40-4 – 40-8.) "Generally, administrative agencies must apply the same basic standard of conduct to all parties before them." *Akee*, 907 F. Supp. at 319 (citation omitted). "If an agency's decision is inconsistent with other findings, the decision may be considered arbitrary if the agency fails to explain the discrepancy." *Id.*

Here, the IHO did not rely solely on the enumeration roster to deny benefits. As Defendant correctly notes, the IHO also relied on the written residency reports of Plaintiff and her father suggesting that they resided in Tonalea in December 1974. (Doc. 45 at 12.) Given this substantial documentary evidence, the IHO did not act in an arbitrary or capricious manner by previously finding credible some testimony in other cases but discounting the witness testimony in this case.

Moreover, the other cases cited by Plaintiff "do not assist in the resolution of this case, and do not make the ONHIR's decision arbitrary and capricious, because they are either distinguishable or have not been shown to be apposite to this case." *Akee*, 907 F. Supp. at 319. The cases do not constitute binding precedent, and do not show that the IHO acted in an arbitrary or capricious manner in finding not fully credible the witness testimony in this case. To the contrary, the IHO provided specific and cogent reasons for his adverse credibility findings. (AR 177-78.)

Plaintiff contends that the IHO applied an outdated "actual occupancy" standard instead of the applicable "legal residency" one. (Doc. 49 at 15.) The IHO, however, explicitly found – three times – that Plaintiff was a "legal resident" of Tonalea and the NPL on December 22, 1974. (AR 179.) Nothing in the record shows that the IHO applied an erroneous legal standard.

"The arbitrary and capricious standard is 'highly deferential, presuming the agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision.'" *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). Under this limited standard of review, a court "may not substitute [its] judgment for that of the agency." *Id.* Because the IHO's decision was based on relevant factors and otherwise is reasonable, the decision was neither arbitrary nor capricious.

### III. Defendant's Decision Was Not Contrary to Law

The decision denying benefits is contrary to law, Plaintiff contends, because it "frustrates the purpose and policy of the Navajo-Hopi Settlement Act and implementing regulations[.]" (Doc. 40 at 12.) But the mere denial of relocation benefits, where appropriate, is neither contrary to law nor inconsistent with the purposes of the Settlement Act. The Court concludes that Defendant's decision in this case was not contrary to law and otherwise "does not violate the federal government's trust obligation to Native Americans because the decision was made in good faith, it was based on substantial evidence, and it was neither arbitrary nor patently inconsistent with other ONHIR decisions." *Akee*, 907 F. Supp. at 320.[3]

### IV. Conclusion

Although Plaintiff contends that the IHO disregarded testimony that supported her eligibility for benefits, she has not established that any relevant testimony was ignored, nor has she demonstrated the existence of any factual dispute that was legally required to be resolved in her favor. In summary, the Court finds that Plaintiff has failed to show that Defendant's decision denying her relocation benefits is arbitrary, capricious, contrary to law, or not based on substantial evidence.

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 40) is **DENIED** and Defendant's cross-motion for summary judgment (Doc. 45) is **GRANTED**. Defendant's administrative decision denying Plaintiff's application for relocation benefits is **AFFIRMED**. The Clerk shall enter judgment accordingly.

Dated this 29th day of June, 2017.

Douglas L. Rayes
United States District Judge

---

[3] For the first time in her reply brief, Plaintiff claims that Defendant has violated its fiduciary duty to her. (Doc. 49 at 14.) No such claim, however, was alleged in the complaint. (Doc. 15.) Moreover, Plaintiff has not shown that the adverse credibility findings, even after significant delay in the administrative proceedings, rise to the level of unconscionability or a breach of fiduciary duty.